Robert K. Lu (Cal. Bar No. 198607)
**REID & WISE LLP**
U.S. Bank Tower
633 West Fifth Street, 26th Floor
Los Angeles, CA
Tel: (619) 300-1849
rlu@reidwise.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TD HOLDINGS, INC., formerly known as CHINA BAT GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SOPHIE HARRISON (a.k.a. XIANQIN WANG HARRISON, SOPHIA WANG, XIANQIN WANG, XUEQING WANG) and HARRISON FUND, LLC,<br><br>Defendants. | Case No.: 3:20-cv-2307<br><br>**COMPLAINT FOR**<br><br>1. **Common-Law Fraud**<br>2. **Violation of Section 10(b) of the Exchange Act of 1934 (15 U.S.C. § 78j(b) and Rule 10b-5 thereunder)**<br>3. **Breach of Fiduciary Duty**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff TD Holdings, Inc., formerly known as China Bat Group, Inc. ("Plaintiff"), by and through its undersigned attorneys, alleges the following against Sophie Harrison (a/k/a Xianqin Wang Harrison, Sophia Wang, Xianqin Wang and Xueqing Wang) and Harrison Fund, LLC (hereinafter as "Harrison Fund" or "Fund," and collectively with Sophie Harrison as "Defendants"):

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff, a Chinese company that was defrauded into

investing $1,000,000.00 US Dollars into the Harrison Fund, against the Defendants who made material misrepresentations to Plaintiff.

2. Defendants provided solicitation materials to the Fund boasting a professional management team with extensive experience managing investment funds of more than $14 billion. Defendants' solicitation materials were entirely false.

3. The key members of the purported management team have confirmed that they were never associated with the Harrison Fund in any capacity and do not have any experience managing multi-billion-dollar funds.

4. By this action, Plaintiff seeks judicial relief from the fraudulent and overreaching actions of Defendants.

**PARTIES**

5. Plaintiff TD Holdings, Inc., formerly known as China Bat Group, Inc., is a corporate entity organized and existing under the laws of Delaware, with its principal place of business in Beijing, China.

6. Upon information and belief, defendant Sophie Harrison (a/k/a Xianqin Wang Harrison, Sophia Wang, Xianqin Wang and Xueqing Wang) is an individual and resident of California with an address at 1630 S Delaware St., Unit 5383, San Mateo, CA 94402, and is sued both in her individual capacity and as agent/officer/owner of Harrison Fund, LLC. Sophie Harrison controls and dominates the Fund.

7. Upon information and belief, defendant Harrison Fund, LLC is a domestic business corporation organized and existing under the laws of California, with its principal place of business at 35 Bel Aire Ct., Hillsborough, CA 94010.

8. There is a complete diversity of citizenship between the Plaintiff and the Defendants.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this action arises under federal law, namely 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder.

10. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state-law claims that are related to, and form part of, the same controversy.

11. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

12. The Court has personal jurisdiction over Defendants because defendant Harrison Fund, LLC maintains a principal place of business in this District, defendant Sophie Harrison is a resident in this District, and the lawsuit arises out of Defendants' activities in this District.

13. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and (b)(2).

**STATEMENT OF FACTS**

14. Plaintiff entered into an investment agreement ("Agreement") with the Fund on May 28, 2019, and invested $1,000,000.00 US Dollars into the Fund pursuant to the Agreement for portfolio management.

15. In soliciting investments from Plaintiff, Defendant Sophie Harrison, as the chairman of the Fund, made material misrepresentations to Plaintiff.

16. On May 22, 2019, Sophie Harrison transmitted to Plaintiff's Chief Executive Officer by WeChat text message a PDF file consisting of "Harrison Fund" solicitation materials which were written in both Mandarin and English.

17. The solicitation materials touted that the Fund was led by a highly seasoned investment manager and a professional management team.

18. The solicitation materials identified a ten-person management team, including four executive officers (two CEOs and two Vice CEOs), which highlighted the officers' purported experience managing more than $14 billion of investment funds. The solicitation materials also highlighted the purported governmental connections of the management team to create a false sense of the safety of the investment.

19. According to the solicitation materials, Mr. Feroz Subedar was identified as "Harrison Fund CEO." Defendants represented in these solicitation materials that Mr. Subedar had previously served in a high-level position with Scottrade Financial Services Inc. and had previously managed a fund with $4.5 billion under management. Specifically, the solicitation materials stated that Mr. Subedar had "managed $4 billion 500 million fund."

20. The solicitation materials identified Mr. Ricardo Longin as "Harrison Fund Vice CEO." Defendants represented that Mr. Longin had prior experience managing a $3.5 billion fund. Specifically, the solicitation materials stated that Mr. Longin had "managed $3 billion 500 million fund."

21. The solicitation materials identified Mr. Ron Mark as "Harrison Fund Chicago Branch CEO." Defendants represented that Mr. Mark had experience managing a $7.3 billion fund. Specifically, the solicitation materials stated, with respect to Mr. Mark: "Now he is managing $7 billion 300 million fund."

22. Relying on Defendants' representations concerning the credentials and composition of the management team, Plaintiff was induced to sign the Agreement and invest $1,000,000.00 into the Fund.

23. Later, however, Plaintiff surprisingly discovered that three of the four executive officers identified as key members of the Harrison Fund management team had never worked for the Fund in any capacity and did not have the claimed experience.

-5-

24. First, Plaintiff learned that Mr. Feroz Subedar had never served as CEO of the Fund and, in fact, had never worked for the Fund in any capacity.

25. Plaintiff next learned that Mr. Ricardo Longin had never served as Vice CEO of the Fund and, in fact, had never worked for the Fund in any capacity.

26. Plaintiff then learned that Mr. Ron Mark had never served as the Fund's Chicago Branch CEO and, in fact, had never worked for the Fund in any capacity.

27. Messrs. Subedar, Longin and Mark confirmed to Plaintiff's counsel that they had no current or prior affiliation with the Harrison Fund, never authorized Sophie Harrison to use their names in connection with the Harrison Fund, and did not have experience managing billion-dollar investment funds.

28. Based on Plaintiff's investigation, it is now clear that other material representations concerning Harrison Fund's management team are likewise false. Other persons identified as members of the management team have never been associated with Harrison Fund or lack the credentials as set forth in the solicitation materials.

29. Defendants were fully aware when they solicited investments from Plaintiff in 2019 that Mr. Feroz Subedar was not the CEO of the Fund, that Mr. Longin was not Vice CEO of the Fund, and that Mr. Mark was not Chicago Branch CEO of the Fund, but they misrepresented to Plaintiff that the Fund was managed by these investment professionals.

30. Defendants were fully aware that their other misrepresentations concerning the Harrison Fund management team were likewise false.

31. In fact, this is not Sophie Harrison has defrauded Chinese investors. According to a complaint filed in this Court, styled *Kang v. Harrison*, Case No. 4:17-cv-03034 (N.D. Cal.), Harrison fraudulently induced the plaintiffs in that case into investing more than $1.5 million based on a series

misrepresentations similar to the misrepresentations at issue here, *i.e.*, the management and characteristics of a certain business immigration investment vehicle.  (Plaintiff is further investigating whether Sophie Harrison has engaged in a pattern of racketeering and, based on such investigation, reserves the right to amend this Complain to assert civil claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968.)

32. Defendants acted with scienter in making these false representations, as demonstrated by the fact that Messrs. Subedar, Longin and Mark have all confirmed that they were never part of the Harrison Fund management team, were never Harrison Fund executive officers, never authorized Defendants to identify them as part of the management team in Harrison Fund solicitation materials, and never told Defendants they had experience managing multi-billion-dollar funds. There is no plausible explanation for Defendants' inclusion of these material misrepresentations in the solicitation materials other than a deliberate, or at a minimum reckless, intent to deceive.

33. Had Defendants provided Plaintiff with truthful and non-misleading information about the identity and credentials of the Fund's management team, Plaintiff would not have signed the Agreement and invested $1,000,000.00 into the Fund.

34. Plaintiff did not learn that it had been defrauded until after it made the $1,000,000.00 investment into the Fund and made repeated inquiries to Sophie Harrison for information concerning the performance of the Fund.

35. Despite repeated requests, Sophie Harrison refused to provide any of the requested information, which leads Plaintiff to suspect that Defendants may have misappropriated Plaintiff's investment funds.

**FIRST CLAIM**
**FRAUD**
**(Against all Defendants)**

-7-

36. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

37. Defendants misrepresented that the Harrison Fund was managed by a professional ten-person management team, which had experience managing billions of dollars of investment funds and extensive governmental connections.

38. Among other misrepresentations, Defendants misrepresented in the solicitation materials that the CEO of the Fund was Mr. Subedar, the Vice CEO of the Fund was Mr. Longin, and the Chicago Branch CEO of the Fund was Mr. Mark, who were said to have experience managing funds of $4.5 billion, $3.5 billion, and $7.3 billion, respectively.

39. Defendants made additional misrepresentations in the solicitation materials regarding the credentials and governmental connections of the other members of the purported management team.

40. Defendants made these representations with the intent that Plaintiff would rely on them to make an investment payment to the Fund.

41. Defendants knew, or were reckless in not knowing, when they solicited investments from Plaintiff that these representations were false.

42. Defendants' misrepresentations were material to Plaintiff's decision to sign the Agreement and to pay the $1,000,000.00 investment fund.

43. In reliance on Defendants' misrepresentations, Plaintiff signed the Agreement and paid the $1,000,000.00 investment into the Fund.

44. Plaintiff has been damaged by signing the Agreement and making the $1,000,000.00 investment payment into the Fund when, if the true facts had been disclosed, they would not have done so.

45. Based on Defendants' fraud, Plaintiff seeks damages in the amount of $1,000,000.00,

plus interest.

46. Defendants committed the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, from an evil and improper motive amounting to fraud and malice, and in conscious disregard of Plaintiff's well-being, reputation and standing in the community. Thus, Plaintiff is entitled to punitive damages under Section 3294 of the California Civil Code in a sum appropriate to punish and make an example out of Defendants, and each of them.

**SECOND CLAIM**
**SECURITIES FRAUD**
**(15 U.S.C. Section 78j(b) & 17 CFR Section 240.10b-5)**
**(Against all Defendants)**

47. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

48. The Agreement solicited by Defendants involves the purchase or sale of securities subject to the Federal Securities Laws.

49. Defendants misrepresented that the Harrison Fund was managed by a professional ten-person management team, which had experience managing billions of dollars of investment funds and extensive governmental connections.

50. Among other misrepresentations, Defendants misrepresented in the solicitation materials that the CEO of the Fund was Mr. Subedar, the Vice CEO of the Fund was Mr. Longin, and the Chicago Branch CEO of the Fund was Mr. Mark, who were said to have experience managing funds of $4.5 billion, $3.5 billion, and $7.3 billion, respectively.

51. Defendants made additional misrepresentations in the solicitation materials regarding the credentials and governmental connections of the other members of the purported management team.

52. Defendants made these representations with the intent that Plaintiff would rely on them to make an investment payment to the Fund.

53. Defendants knew, or were reckless in not knowing, when they solicited investments from Plaintiff that these representations were false.

54. Plaintiff reasonably relied on these misrepresentations by signing the Agreement and making the $1,000,000.00 investment payment to the Fund.

55. Plaintiff would not have signed the Agreement or paid $1,000,000.00 into the Fund absent aforesaid material misrepresentations.

56. By engaging in the conduct above, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. 15 U.S.C. § 78j(b) and 17 CFR § 240.10b-5.

57. Plaintiff has been damaged by Defendants' violation of the foregoing statute(s) and regulation(s) in the amount of $1,000,000.00, plus interest.

### THIRD CLAIM
### BREACH OF FIDUCIARY DUTY
### (Against all Defendants)

58. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

59. The Fund owes fiduciary duties to Plaintiff, including the duties of loyalty, care, candor, and good faith and fair dealing.

60. Sophie Harrison, as the individual who controls and dominates the Fund, owes fiduciary duties to Plaintiff, including the duties of loyalty, care, candor, and good faith and fair dealing.

61. Defendants have violated their fiduciary duties by concealing from Plaintiff requested information concerning the status and whereabouts of its investment and by refusing to demonstrate, in response to Plaintiff's well-founded suspicions, that they have not misappropriated Plaintiff's investment.

62. Defendants have further violated their fiduciary duties by providing false information to,

and withholding material information from, Plaintiff concerning the credentials and composition of the management team of the Fund.

63. Based on Defendants' breach of fiduciary duties, Plaintiff seeks damages in the amount of $1,000,000.00, plus interest.

64. Defendants committed the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, from an evil and improper motive amounting to fraud and malice, and in conscious disregard of Plaintiff's well-being, reputation and standing in the community. Thus, Plaintiff is entitled to punitive damages under Section 3294 of the California Civil Code in a sum appropriate to punish and make an example out of Defendants, and each of them.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a judgment against Defendants, jointly and severally, as follows:

(i) Damages in an amount of $1,000,000.00;

(ii) A full accounting of Plaintiff's investment and the Fund's financial performance;

(iii) Interest;

(iv) Punitive damages in an amount determined at trial;

(v) Costs and attorneys' fees; and

(vi) Such other relief as the Court may deem just and reasonable.

Dated: April 6, 2020                          Respectfully submitted,

**REID & WISE LLP**

BY:    /s/ Robert K. Lu /s/

           Robert K. Lu
           Attorney for Plaintiff

Matthew Sava
Shiyong Ye
Zheng Gao
**Reid & Wise LLC**
One Penn Plaza, Suite 2015
New York, NY 10119
Tel: (212) 858-9968
sava@reidwise.com
sye@reidwise.com
zgao@reidwise.com
*Applications for pro hac vice admission forthcoming*

# DEMAND FOR TRIAL BY JURY

Plaintiff, China Bat Group, Inc., pursuant to Rule 38 of the Federal Rules of Civil Procedure, hereby demands trial by jury of all issues so triable in the present action.

Dated: April 3, 2020                    Respectfully submitted,

**REID & WISE LLP**

BY:        /s/ Robert K. Lu /s/

Robert K. Lu
Attorney for Plaintiff

Matthew Sava
Shiyong Ye
Zheng Gao
**Reid & Wise LLC**
One Penn Plaza, Suite 2015
New York, NY 10119
Tel: (212) 858-9968
sava@reidwise.com
sye@reidwise.com
zgao@reidwise.com
*Applications for pro hac vice admission forthcoming*